# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

January 21, 2016

Lyle W. Cayce
Clerk

No. 15-30300

CAL DIVE INTERNATIONAL, INCORPORATED; UNDERWRITERS SEVERALLY SUBSCRIBING LLOYDS POLICY PE0903008,

      Plaintiffs - Appellants

v.

ANDREW SCHMIDT; THOMAS R. EDWARDS; THOMAS R. EDWARDS, INCORPORATED, A.P.L.C.; JOSEPH W. WALKER; BHG STRUCTURED SETTLEMENTS, INCORPORATED; BERKSHIRE HATHAWAY LIFE INSURANCE COMPANY OF NEBRASKA,

      Defendants - Appellees

Appeals from the United States District Court
for the Western District of Louisiana
USDC No. 6:14-CV-3033

Before STEWART, Chief Judge, KING and HIGGINSON, Circuit Judges.

PER CURIAM:*

    After settling a lengthy, hotly contested lawsuit against it on the eve of trial, Cal Dive International, Inc. continued to surveil the former plaintiff Andrew Schmidt in an apparent effort to monitor the continuing effects of a

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

brain injury that had allegedly left Schmidt permanently disabled. Based on discovery of evidence suggesting that Schmidt was not in fact permanently disabled, exactly one year after entry of the judgment based on that settlement, Cal Dive filed a new lawsuit alleging that the settlement agreement had been induced through fraud. We are called upon to decide whether, on these alleged facts, Cal Dive may undo the judgment and underlying settlement agreement.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

We take the facts that follow from Cal Dive's complaint in this case. Schmidt was previously employed by Cal Dive as a diver. On April 7, 2010, Schmidt suffered a brain injury due to decompression sickness contracted while surfacing from a work-related dive. On April 19, 2012, he sued Cal Dive alleging that the injury left him permanently disabled ("*Schmidt I*"). Specifically, Schmidt alleged that he suffered "Type II neurological (cerebral) decompression sickness" and that he was required to remain in a supine position at nearly all times.

Cal Dive apparently did not believe Schmidt's allegations or his subsequent deposition testimony. It hired private investigators to surveil him, and for more than two years he was monitored for evidence of malingering. According to Cal Dive's complaint, the investigation turned up nothing; Cal Dive "did not find any evidence indicating that Schmidt was feigning his alleged injuries and disabilities." Meanwhile, Schmidt was examined by a number of medical professionals. According to the district court, Schmidt and Cal Dive procured several conflicting expert opinions regarding the nature of the injury and whether Schmidt was permanently disabled.[1]

---

[1] This case reaches us following a Rule 12(b)(6) dismissal. Accordingly, the "facts" are recited in the light most favorable to Cal Dive and primarily drawn from the complaint. *See Harris Cnty. Texas v. MERSCORP Inc.*, 791 F.3d 545, 551 (5th Cir. 2015). Like the trial court, we may also consider "matters of public record," including the record of the underlying litigation. *Norris v. Hearst Trust*, 500 F.3d 454, 461 n.9 (5th Cir. 2007); *see also* Fed. R. Evid.

No. 15-30300

After more than three years of active litigation, shortly before a jury trial was scheduled to begin, on October 15, 2013, Cal Dive and Schmidt reached a settlement agreement (the "Agreement"). On or around December 18, 2013, Schmidt signed a "Release of All Claims" (the "Release"). At the parties' joint request, the district court entered judgment dismissing all claims on January 8, 2014 (the "Judgment").

Cal Dive continued to surveil Schmidt and to collect evidence about the degree of his injury. It learned that, after reaching the Agreement but before signing the Release, Schmidt had acquired a driver's license and purchased a new car. In the months following the settlement, Schmidt was observed "cutting his grass, shopping, driving, and jogging for at least two miles."

Though Cal Dive could have filed a motion under Rule 60(b)(3) to challenge the settlement as procured through fraud, it instead filed this "independent action" under Rule 60(d)(1). In addition to suing Schmidt, Cal Dive sought recovery from the attorneys who had represented him (on a contingent fee) in the underlying action, and also named as defendants those entities responsible for handling the disbursal of settlement funds.

Schmidt has not suggested that an independent action was unavailable or otherwise impermissible under the circumstances, and we will therefore assume its propriety.[2] Because the action was an independent action, the

---

201(b). Given that this independent action was brought under Rule 60 with the purpose of setting aside a judgment entered in the very same district court, judicial notice of the underlying record is particularly appropriate under the circumstances. The district court that presided over both *Schmidt I* and this case seems to have reached the same conclusion. Its opinion is replete with references and citations to *Schmidt I. See generally Cal Dive Int'l Inc. v. Schmidt*, No. 14-03033, 2015 WL 1089442 (W.D. La. Mar. 4, 2015). Cal Dive has not objected to the introduction of these facts, and we accept them as accurate. To the extent we go beyond the complaint, it is only to consider "matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

[2] There are specific requirements that must be satisfied before an "independent action in equity" may be brought. *See Turner v. Pleasant*, 663 F.3d 770, 776 (5th Cir. 2011) (listing those requirements). Where fraud is alleged, "[s]imple fraud is insufficient," and "a motion

3

defendants filed motions pursuant to Rule 12(b)(6) to dismiss the case for failure to state a claim. The district court granted the motions, concluding that Cal Dive's "allegations fail to state a plausible claim that discovery will lead to the clear and convincing evidence that Schmidt engaged in fraud or other misconduct which prevented Cal Dive from fairly presenting their case."[3] *Cal Dive Int'l*, 2015 WL 1089442, at \*6. Subsequently, the district court denied Cal Dive's Rule 59(e) motion for leave to file an amended complaint, finding that Cal Dive's proposed amended complaint would be futile. Cal Dive timely appeals.

## II.    STANDARD OF REVIEW

"We review a district court's decision on a [Rule] 12(b)(6) motion de novo, accepting all well-pleaded facts as true and viewing those facts in the light most favorable to the plaintiff." *Stokes v. Gann*, 498 F.3d 483, 484 (5th Cir. 2007) (per curiam). The parties agree that this well-known standard of review applies to Rule 60(d)(1) independent actions, and unpublished decisions of this circuit support that view. *E.g.*, *ABC Utils. Servs. Inc. v. Orix Fin. Servs. Inc.*, 98 F.App'x 992, 993 (5th Cir. 2004) (per curiam) (unpublished); *Ballew v. U.S. Dep't of Justice*, 244 F.3d 138 (5th Cir. 2000) (unpublished). Other circuits have applied different standards when an appeal involves a Rule 60(d)(1)

---

under Rule 60(b)(3) is the proper vehicle to reopen judgment." *Id.* at 777. Accordingly, we assume not only that a Rule 60(d)(1) independent action was procedurally available but also that "the fraud alleged [is] of a greater order of magnitude" than ordinary fraud. *See id.*

[3] The district court invoked the clear and convincing standard applicable to Rule 60(b)(3) motions because, despite being filed as an independent action, Cal Dive bases its claim for relief from the judgment on Rule 60(b)(3). On appeal, Cal Dive asserts the district court "improperly conflated the ultimate burden of proof with the pleading standard." There is authority suggesting that a Rule 60(d)(1) independent action may not proceed where a Rule 60(b)(3) motion is available—*i.e.*, the two are mutually exclusive. *See United States v. Beggerly*, 524 U.S. 38, 46 (1998); *Turner v. Pleasant*, 663 F.3d 770, 778 (5th Cir. 2011). However, we need not address the issue of how the district court should have analyzed defendants' Rule 12(b)(6) motion under the circumstances because application of the unadorned plausibility standard for which Cal Dive advocates leads to the same result reached by the district court.

No. 15-30300

independent actions. *Compare Comput. Leasco, Inc. v. NTP, Inc.*, 194 F.App'x 328, 333 (6th Cir. 2006) (unpublished) (applying *de novo* review), *with Appling v. State Farm Mut. Auto. Ins. Co.*, 340 F.3d 769, 780 (9th Cir. 2003) (applying abuse of discretion review because a Rule 60(d)(1) independent action "is based on equity"), *and Superior Seafoods, Inc. v. Tyson Foods, Inc.*, 620 F.3d 873, 878–79 (8th Cir. 2010) (applying abuse of discretion review but recognizing that review is *de novo* if "the dispositive issue is purely one of law"). However, we need not explore any potential conflict among the circuits. The dispositive questions here are questions of law, and review is therefore undoubtedly *de novo*. *See Kelly Inv., Inc. v. Cont'l Common Corp.*, 315 F.3d 494, 497 (5th Cir. 2002) (explaining that, even where an abuse of discretion standard of review applies, "to the extent that such a decision rests on an interpretation of law, the review is *de novo*").

## III.   DISCUSSION

While Cal Dive raises multiple issues on appeal, we need examine only its challenge to the underlying Judgment and Agreement. If the Judgment and Agreement cannot be set aside, the entirety of Cal Dive's action must fail.

"Because the claims in this case are premised on federal general maritime law, we apply federal law to decide the validity of the agreement to settle the claims." *Mid-S. Towing Co. v. Har-Win, Inc.*, 733 F.2d 386, 389 (5th Cir. 1984). Settlements, like other contracts, may be set aside for fraud. *Young v. BP Expl. & Prod., Inc. (In re Deepwater Horizon)*, 786 F.3d 344, 362 (5th Cir. 2015).

To show fraudulent inducement to enter a settlement, a plaintiff must prove:

> (1) a material representation was made; (2) the representation was false; (3) when the representation was made, the speaker knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion; (4) the representation was made with

5

the intention that it be acted upon by the other party; (5) the party acted in reliance on upon the representation; and (6) the party suffered injury.

*Id.* at 363 (internal quotations and citations omitted).

Cal Dive did not sufficiently plead reliance. The record—and Cal Dive's Complaint itself—contradicts the conclusory assertion that it "relied upon Schmidt's material fraudulent misrepresentations." Cal Dive did not believe Schmidt's allegations or testimony and hired its own experts to examine him over several years. Cal Dive admitted in the Complaint that it "diligently investigated Schmidt at considerable expense" after the April 2010 accident and prior to the October 2013 settlement conference confected on the eve of trial. It is undisputed that, as the district court noted, "Schmidt's symptoms and diagnosis were corroborated by his own healthcare providers as well [as] multiple physicians and experts chosen by Cal Dive." Cal Dive did not plead that "it acted in reliance on upon [Schmidt's] representation" regarding the extent of his injuries, except to speculate that his post-settlement physical condition necessarily *proves* that its own prior examinations of him were fraudulently induced by his self-portrayal. *Deepwater Horizon*, 786 F.3d at 363; *see also Howard v. Chris-Craft Corp.*, 562 F. Supp. 932, 938 (E.D. Tex. 1982) ("Accordingly, even if plaintiffs' statements were false—which is, of course, not proven,—and even if they were intentionally false—*a fortiori*, not proven,—defendants could still not have been defrauded by plaintiffs *as a matter of law*, since they never believed plaintiffs' representations."); *cf. Russell v. Puget Sound Tug & Barge Co.*, 737 F.2d 1510, 1511 (9th Cir. 1984) ("On viewing these films, defendants' medical and vocational experts stated that they would revise their opinions of Russell's disability.").

No. 15-30300

Because Cal Dive did not adequately plead reliance, dismissal was proper.[4]  Contending that it should have been afforded an opportunity to amend its complaint, Cal Dive also appeals from the denial of its Rule 59(e) motion.  "[U]nder these circumstances, the considerations for a Rule 59(e) motion are governed by Rule 15(a)." *Rosenzweig v. Azurix Corp.*, 332 F.3d 854, 864 (5th Cir. 2003).  "[W]here, as here, the district court's denial of leave to amend was based solely on futility, we apply a de novo standard of review identical, in practice, to the standard used for reviewing a dismissal under Rule 12(b)(6)." *City of Clinton v. Pilgrim's Pride Corp.*, 632 F.3d 148, 152 (5th Cir. 2010).

Cal Dive asserts vaguely that "[t]here can be little doubt that the proposed amended complaint more than adequately states claims for fraud and completely resolves any pleading deficiencies perceived by the trial court." Like the Complaint, however, the proposed amended complaint demonstrates Cal Dive never believed Schmidt's allegations or testimony.  Accordingly, filing of the proposed amended complaint would be futile.  *See Varela v. Gonzales*, 773 F.3d 704, 707 (5th Cir. 2014) (per curiam) (stating that an amendment would be futile "if the complaint as amended would be subject to dismissal" (quoting *Ackerson v. Bean Dredging LLC*, 589 F.3d 196, 208 (5th Cir. 2009)).

---

[4] *Deepwater Horizon* held that parties may not generally "challenge a settlement agreement on the basis of an alleged fraud that relates to the underlying merits of the claim that was settled."  786 F.3d at 362–63 (internal citations and quotations omitted).  The "existence and extent" of injuries go "directly to the merits" of the personal injury claim. *See id.* at 363–64.  Nonetheless, "[w]here the defendant subsequently uncovers previously unavailable evidence that the plaintiff was in fact not injured at all, or sustained only *de minimis* injuries, the defendant may argue that the plaintiff fraudulently induced it to enter into a settlement agreement." *Id.* at 363.  Cal Dive's failure to adequately allege reliance renders it unnecessary to decide whether and how this aspect of *Deepwater Horizon* applies to the present case.

No. 15-30300

## IV.    CONCLUSION

For the foregoing reasons, we AFFIRM the judgment and order of the district court.