# United States Court of Appeals
## for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
March 31, 2022

Lyle W. Cayce
Clerk

No. 21-10294

Okoeguale Obinyan,

*Plaintiff—Appellant*,

*versus*

Walgreens Specialty Pharmacy Holdings, L.L.C.,

*Defendant—Appellee*.

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:18-CV-933

Before Barksdale, Stewart, and Dennis, *Circuit Judges*.
Per Curiam:*

The linchpin in Okoeguale Obinyan's Title VII action against Walgreens Specialty Pharmacy Holdings, L.L.C. (WSPH), is whether it became Obinyan's employer as the result of a joint business venture (venture) between Prime Therapeutics, L.L.C. (Prime), and Walgreens Co. (Walgreens). Proceeding *pro se*, Obinyan challenges: an entry of default

---

* Pursuant to 5th Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Circuit Rule 47.5.4.

being set aside; his motions to compel discovery being denied; and summary judgment's being granted for WSPH on the basis that it did not employ him. AFFIRMED.

## I.

Prime, a third-party pharmacy benefits manager, hired Obinyan in December 2010 to work as a customer-service representative in its Irving, Texas, facility, at which Obinyan worked until his termination in October 2017. Prime and Walgreens entered the venture on 31 March 2017 "to combine . . . pharmacies and related businesses . . . each company owned". As a result, WSPH was created as a holding company, owned jointly by Prime and Walgreens, with their remaining separate entities.

WSPH became the owner of, *inter alia*, Prime's Irving facility. Because WSPH had not yet implemented employment policies or protocols, it entered into an employee-lease agreement with Prime, which began that April. Prime leased employees at its Irving facility, including Obinyan, to WSPH, with those employees to remain employed by Prime until WSPH became their employer at the end of 2017. (Obinyan contends that, because of the venture, he became an employee of WSPH on 4 April 2017.) Until Obinyan's termination that October, Prime: employed Obinyan in multiple positions; paid and supervised him; implemented employee-discipline procedures against him; and administered employee-benefit programs in which he participated.

In June 2017, Prime reproached Obinyan for: failing to meet daily-production metrics; and taking time off work without authorization. He contended these actions constituted discrimination and filed: complaints with *Prime's* human-resources department; and a charge of discrimination based on retaliation with the EEOC, *listing Prime as his employer*.

No. 21-10294

At the end of the summer, Obinyan was informed that his department was being relocated. Prime provided him with two options: secure another position with it; or remain employed, be terminated eventually, and receive severance pay if he signed, *inter alia*, an agreement releasing all claims against it. Obinyan neither secured another position nor signed the agreement.

Prime terminated Obinyan that October. (Earlier that month, some pharmacies owned by WSPH began using the tradename "Alliance Rx Walgreens Prime" (Alliance).) Obinyan's requested severance pay from Prime was denied because, as noted, he failed to sign a claims-release agreement. That November, he filed a second charge of discrimination with the EEOC against Prime for national-origin discrimination, contending Prime had discriminated against him as early as 2016.

Having received a right-to-sue letter and proceeding *pro se*, Obinyan filed this action in 2018 against, *inter alia*, Prime, Alliance, and Walgreens, contending they violated Title VII of the Civil Rights Act of 1964 by: discriminating against him on account of his race and national origin; and retaliating against him. *Obinyan did not, however, include WSPH as a defendant*.

Default was entered against Alliance (entry) after it did not respond to Obinyan's complaint. On the same day that Obinyan moved for default judgment against Alliance, WSPH moved to set aside the entry, contending it was named incorrectly as Alliance in Obinyan's complaint, and noting Obinyan's confusion likely resulted from some pharmacies owned by WSPH beginning to use the Alliance tradename in October 2017. A magistrate judge's report (R & R) recommended, *inter alia*: WSPH did not willfully fail to respond; and the entry be set aside. The district court: adopted the R & R; set aside the entry; and ordered WSPH to file a responsive pleading.

No. 21-10294

WSPH's motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) (failure to state claim) was granted; but Obinyan was permitted to replead his claims against WSPH. In doing so, he contended WSPH violated Title VII through national-origin discrimination and retaliation. WSPH's second similar motion to dismiss was denied.

In his two motions on 20 October and 2 November 2020 to compel discovery from Prime and Walgreens, Obinyan sought, *inter alia*, information pertaining to WSPH's formation. Both motions were denied. (The motions were against Prime and Walgreens as nonparties. All defendants other than WSPH had been dismissed in 2019.)

After WSPH moved for summary judgment in 2021, contending, *inter alia*, it never employed Obinyan, his response was instead an objection to WSPH's first motion to dismiss, which the court construed as a summary-judgment response. He also filed: a February 2021 motion to compel discovery from WSPH; and a "second response" to its summary-judgment motion. This response was not considered because it constituted an improper surreply.

In its 17 March 2021 opinion and order, the court, *inter alia*: denied as moot Obinyan's motion to compel discovery; awarded summary judgment to WSPH on the basis it was not his employer; and dismissed this action with prejudice.

## II.

In challenging his action's being dismissed, Obinyan presents three issues. (As noted, he proceeds *pro se*, as he did in district court. Accordingly, his briefs and filings "are to be liberally construed". *Coleman v. United States*, 912 F.3d 824, 828 (5th Cir. 2019) (citation omitted).) Title VII prohibits, *inter alia*, "an employer" from: "discriminat[ing] against any individual . . . because of such individual's . . . national origin"; and retaliating

against an employee for engaging in a protected activity under the Act.   42 U.S.C. §§ 2000e-2(a), 3(a).

## A.

The entry's being set aside because WSPH was named incorrectly as Alliance in Obinyan's complaint is reviewed for abuse of discretion.  *E.g.*, *Koerner v. CMR Constr. & Roofing, L.L.C.*, 910 F.3d 221, 225 (5th Cir. 2018). Factual findings underlying the decision are reviewed for clear error.  *Lacy v. Sitel Corp.*, 227 F.3d 290, 292 (5th Cir. 2000).

Rule 55(c) states a "court may set aside an entry of default for good cause".   Three factors are generally applied:   "whether the default was willful"; "whether setting it aside would prejudice the adversary"; and "whether a meritorious defense is presented".  *Lacy*, 227 F.3d at 292 (citation omitted).  Obinyan's opening brief, liberally construed, claims error for only the second and third factors.

### 1.

Obinyan's prejudice challenge is waived for failure to brief.  (As is true for all parties, *pro se* appellants must brief their challenges to preserve them. *E.g.*, *Yohey v. Collins*, 985 F.2d 222, 224–25 (5th Cir. 1993).)   Obinyan reiterates his prejudice challenge without explaining what prejudice, if any, resulted, instead making conclusory statements about:  the court's failure to explain how it determined WSPH was named incorrectly as Alliance; and the evidence did not support setting aside the entry.

### 2.

Presenting a meritorious defense is a low bar:   "the underlying concern is whether there is *some possibility* that the outcome of the suit after a full trial will be contrary to the result achieved by the default".  *In re OCA, Inc.*, 551 F.3d 359, 373 (5th Cir. 2008) (emphasis added) (citation and

alterations omitted).   WSPH presented sufficient allegations to support setting aside the entry, including a declaration explaining WSPH never employed Obinyan.  Moreover, the adopted R & R addresses adequately why setting aside the entry was proper.

## B.

Obinyan filed three motions to compel discovery:  against Prime in October 2020; Walgreens that November; and WSPH in February 2021.  Denial of a motion to compel discovery is reviewed for abuse of discretion.  *E.g.*, *Landry v. Air Line Pilots Ass'n Int'l AFL-CIO*, 892 F.2d 1238, 1270 & n.114 (5th Cir. 1990).

Although Obinyan asserts the court failed to rule on his first two motions, they were denied on 14 January 2021.  He also makes conclusory statements that:  the denials violated his due-process rights; and the court generally erred.  These challenges are waived for failure to brief, as Obinyan provides no explanation to substantiate his assertions.

## C.

The summary judgment granted WSPH is reviewed *de novo*, under the same standards used by the district court.  *Hagen v. Aetna Ins. Co.*, 808 F.3d 1022, 1026 (5th Cir. 2015).  Summary-judgment evidence is viewed in the light most favorable to the non-movant.  *E.g.*, *Am. Family Life Assur. Co. of Columbus v. Biles*, 714 F.3d 887, 895 (5th Cir. 2013) (per curiam).

Summary judgment is proper "if . . . movant shows that there is no genuine dispute as to any material fact and . . . is entitled to judgment as a matter of law".  Fed. R. Civ. P. 56(a).  A "dispute about a material fact is 'genuine' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party".  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  If movant "makes a properly supported motion for

summary judgment, the burden shifts to . . . nonmovant to show . . . the motion should not be granted". *Edwards v. Cont'l Cas. Co.*, 841 F.3d 360, 363 (5th Cir. 2016) (citation and alteration omitted).

As noted *infra*, generally only employers may be liable for conduct in violation of Title VII. *E.g.*, *Oden v. Oktibbeha Cnty.*, 246 F.3d 458, 462 (5th Cir. 2001). Accordingly, for all claims against it, WSPH contended it never employed Obinyan as a result of the venture because, *inter alia*: he was not required to reapply for his position; he never received new employee policies or benefits-program information from WSPH; Prime continued to pay and supervise him; and he listed Prime as his employer on his tax returns through 2017.

Obinyan's summary-judgment evidence was, *inter alia*: an email referring to him as an Alliance employee; an email directing him to send files to WSPH; a screenshot of a joint-employment-application database used by WSPH and Prime, showing he applied to positions at WSPH; and emails showing he applied for a WSPH position and requested an interview.

The court considered whether WSPH and Prime constituted a single, or a joint, employer, and granted summary judgment for WSPH on both theories. Obinyan claims only that they constitute a joint employer.

The latter part of Obinyan's employment by Prime coincided with the venture's initial stages, evidenced by Obinyan's applying for WSPH positions. Essentially for the reasons stated by the district court: he fails to show a genuine dispute of material fact exists for whether WSPH and Prime constituted a joint employer; and, WSPH is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Prime, *inter alia*, hired Obinyan; paid his wages; supervised him; provided employee benefits in which he participated; implemented employee-disciplinary procedures against him; and terminated him when he failed to seek another position with Prime.

No. 21-10294

## III.

For the foregoing reasons, the judgment is AFFIRMED.